Robert D. WALLICK, et al., Petitioners,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,

and

2400 Pennsylvania Tenants Association, Inc., Intervenor-Respondent.

No. 84–176.

District of Columbia Court of Appeals.

Argued Oct. 23, 1984.

Decided Jan. 31, 1985.

Whayne S. Quin, Washington, D.C., with whom Larry B. Blackwood and Christopher H. Collins, Washington, D.C., were on the briefs, for petitioners.

Karen J. Krueger, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Michael B. McGovern, Washington, D.C., for the intervenor-respondent.

Before PRYOR, Chief Judge, NEBEKER and BELSON, Associate Judges.

PER CURIAM:

■ Petitioners appeal from the District of Columbia Board of Zoning Adjustment's affirmance of the Zoning Administrator's interpretation that a clinic is not a "residential use" for the purpose of the District of Columbia Zoning Regulation which sets floor area ratios for commercial districts, 11 DCMR § 771.2 (1984). We hold that the Board's order is not clearly erroneous or inconsistent with the Zoning Regulations as a whole, and affirm.

Petitioners, trustees of the property located at 2400 Pennsylvania Avenue, N.W., filed a request that the Zoning Administrator interpret 11 DCMR § 771.2 [§ 5301.-11][1] of the Zoning Regulations to include clinics under the phrase "apartment house or other residential use."[2] That section limits the maximum permitted floor area ratio (FAR). A FAR is "a figure that expresses the total gross floor area as a multiple of the area of the lot. This figure is determined by dividing the gross floor area of all buildings on a lot by the area of that lot." § 199.9 [§ 1201]. The instant property, located in the C–2–C district, has a maximum permissible FAR of 6.0 for an apartment house or other residential use, but only a 2.0 FAR for "other permitted use." § 771.2.

The Zoning Administrator, in response to petitioners' request, issued his opinion that a clinic is not a "residential use" for FAR purposes, with the result that clinics in the C–2–C district are subject to a maximum FAR of 2.0. The Zoning Administrator based his opinion on the plain meaning of the term "residential" as "having to do with or used as one's home or dwelling" and upon his understanding that the intent of the Zoning Commission was that clinics are not to be deemed residential for FAR purposes. Petitioners appealed this decision to the Board of Zoning Adjustment (hereinafter BZA). The BZA granted leave to intervene to the 2400 Pennsylvania Tenants Association, Inc. The BZA, after argument, affirmed the Zoning Administrator's interpretation of § 771.2. Order No. 13935 (Feb. 7, 1984). Petitioners appeal from that order.

■ Our review of the BZA's interpretation of the Zoning regulations is limited; this court must give great deference to the BZA's interpretation and uphold that interpretation unless it is clearly erroneous or inconsistent with the Zoning Regulations as a whole. *Sheridan-Kalorama Neighborhood Council v. D.C. Board of Zoning Adjustment*, 411 A.2d 959, 961 (D.C.1979).[3]

---

1. The regulation at issue, 11 DCMR § 771.2 (May 1984) was published in identical form, 11 DCMR § 5301.11 (July 1982) (provisional edition) at the time of the events below. We will refer to the current regulations throughout this opinion, with the former regulation number in brackets.

2. A clinic is defined as:
   a building or part of a building in which members of the medical or dental professions are associated for the purpose of conducting a joint practice of the professions. Each clinic shall contain a diagnostic center and, in addition, may contain research, educational, minor surgical, or treatment facilities; Provided, that all the facilities are limited to the treatment and care of out-patients.
   The term "clinic" shall be limited to those buildings in which the joint practice of medical or dental professions is conducted in such a manner that all fees for services rendered are established by and paid to a common business office without direct payment of the fees to individual practitioners, and shall not include a building in which the separate and individual practice of the above professions is conducted.
   § 199.9 [§ 1201].

3. Petitioner contends that the "clearly erroneous" standard of review is inapplicable to the BZA's interpretation of the Zoning Regulations because the regulations are promulgated by a separate authority—the Zoning Commission, D.C.Code §§ 5–413, 5–424 (1981), citing *Dietrich v. District of Columbia Board of Zoning Adjustment*, 320 A.2d 282, 288 (D.C.1974) (Harris, J., dissenting) (considerably more relaxed standard than clearly erroneous should apply when BZA interprets Zoning Commission regulations). This court has adopted "clearly erroneous or

In essence, petitioners argue that it was clearly wrong and inconsistent for the BZA to limit the term "residential use" for FAR purposes, § 771.2, to "having to do with or used as a home or dwelling" rather than adopting petitioners' suggested construction that "residential use" is *any* use that is *permitted* in a residential zone.[4]

The BZA is required to refer to "Webster's Unabridged Dictionary" for any term not specifically defined in the Zoning Regulations.[5] § 199.8 [§ 1201.2] Webster's defines "residential" as:

> 1a: used, serving, or designed as a residence or for occupation by residents <a ~ hotel> b (1): providing and administering living accommodations for students <a ~ college> (2): requiring or involving attendance of classes on a campus < ~ study> <a ~ course>
>
> 2: adapted or restricted to or occupied by residences <a ~ quarter>
>
> 3: of, relating to, or connected with residence or residences < ~ trade> <a ~ zone> < ~ Construction>

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED at 1931 (1969). Petitioners fault the BZA for not emphasizing the third definition. They observe that the numbering system is "only a lexical convenience," not an established hierarchy. *Id.* at 19a.

Petitioners alternatively suggest that Webster's is of inadequate service for defining "residential use," a term of art, and observe that many of the defined terms in the Zoning Regulations are different from their Webster's definition. Petitioners overlook the reason why the regulations specially define some words and not others—words used in accordance with their common definition need not be specially explained.

█ Petitioners argue that it is inconsistent to permit clinics in a residential district, R–5–D, to attain a 5.0 FAR, § 402.4 [§ 3302.1], while a clinic in the less restrictive commercial district, C–2–C, is limited to a 2.0 FAR by the BZA's interpretation. Petitioners' expert witness stated that such an interpretation "is totally inconsistent with the structure of cumulative zoning as I know it around the country." The Board acted reasonably in giving such testimony little weight, because the expert failed to focus on the purposes of the District of Columbia's Zoning Regulations. The BZA determined that while the District's zoning regulations are "cumulative as to use, they are not cumulative as to height, area, bulk and density."

A review of the legislative history of the Zoning Regulations confirms that the BZA's interpretation of "residential use" is not clearly erroneous and not inconsistent with the regulations as a whole. The legislative history reveals a policy of encouraging the construction of apartment houses and other residential uses in the C–2–C district. The generous 6.0 FAR for such uses, and the limited 2.0 FAR for nonresidential uses, such as clinics, implements this policy.

inconsistent with the zoning regulations as a whole" as its standard of review of BZA interpretations of the Zoning Regulations, *e.g., Dietrich, supra,* 320 A.2d at 286 (majority opinion); *Lenkin v. District of Columbia Board of Zoning Adjustment,* 428 A.2d 356, 358 (D.C.1981), and we note that the "clearly erroneous" standard is especially appropriate in this case, where the BZA's interpretation of the Regulations is based in part on a consistent interpretation of the Zoning Commission made in 1974. Zoning Commission Case No. 73–22 (hospital is not a residential use for purposes of determining area and bulk restrictions in commercial districts).

4. Clinics are permitted as a matter of right in residential zones R–4 and R–5. §§ 330.5 [§ 3104.37], 350.4 [§ 3105.31]. Any use permitted in a R–5 district (except for certain community-based residential facilities) is permitted as a matter of right in a C–2 district. §§ 701.2 [§ 5101.31], 721.1 [§ 5102.31].

5. The only unabridged edition of a Webster's dictionary is WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED, published in successive printing by the G. & C. Merriam Company. *See* 6 BOOKS IN PRINT at 5075 (1984).

The C–2 district had its genesis in 1967, when the Zoning Commission created it "to provide a large variety of retail, commercial business and professional services for the surrounding Neighborhood." Zoning Commission Order No. 67–25 (July 5, 1967). In 1978, the Zoning Commission increased the FAR for an "apartment house or other residential use" in the C–2 districts, Zoning Commission Order No. 234 (Sept. 14, 1978), as well as in special purpose districts. Zoning Commission Order No. 235 (Sept. 14, 1978). The Zoning Commission then stated that "[o]ne of·the main thrusts of the [special purpose district FAR amendment], as well as the revisions in the Commercial Districts ... is to encourage development of residential uses in all areas of the District of Columbia." Statement of Reason, Order No. 235, Zoning Commission, Case No. 78–2, at 20. The Zoning Commission explained "that in order to encourage residential uses due to the economics of development there must be a higher [floor area ratio] density assigned to residential uses than is allowed for commercial uses." *Id.* at 26. Residential uses are favored because they "increase the vitality of surrounding commercial uses, by providing more potential customers for stores, the-

aters, offices and services. *Id.* at 20. The 24-hour residents of apartment buildings and other dwellings are more likely to partake in such daytime and evening activities than the occasional daytime visitor to a clinic.

Our review of the legislative background demonstrates that the BZA's interpretation of "residential use" is consistent with the history and purpose of the Zoning Regulations.[6]

Furthermore, the BZA's challenged interpretation of "residential use" as limited to those uses, from one-family to multiple dwellings, listed in § 105.1 [§ 2101.11] was adopted by the Zoning Commission when the Commission determined in 1974 that hospitals were not a "residential use" for the purposes of determining area and bulk restrictions in commercial districts. Case No. 73–22.[7]  The Zoning Commission's 1974 interpretation of the term "residential use" is completely consistent with the BZA's instant interpretation.[8] *See Udall v. Tallman,* 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616 (1965) (agency consistently construed regulation).

---

**6.** Indeed, if the BZA were to adopt petitioner's definition—any use permitted in a residential district—an anomolous result would occur. The zoning regulations require that residential recreation space be provided for the use of the residents when all or a portion of a building in a commercial district is devoted to residential use (other than single-family dwelling, flat, or hotel). § 773.1 [§ 302.2]. Petitioner's definition would mandate provision of recreation space even if no persons resided in a building consisting of clinics.

**7.** The Zoning Administrator explained in 1974 that his office previously understood the term "residential" to encompass any structure permitted in any residential district, but upon review of the regulations adopted the more restrictive definition. It was this more restrictive definition that the Zoning Commission endorsed in 1974 and which the BZA has applied to. the instant case.

**8.** Petitioner cites to several specific definitions of "residential use" in the Zoning Regulations. Each cited definition is limited in application by its terms to a particular section. Petitioner observes that those specific definitions of "residential use" contain five different combinations of permitted uses. Petitioner contends that some of the definitions permit non-dwelling units and that the undefined "residential use" in § 771.2 may be no more restrictive. To the contrary, none of the cited special definitions include a use where persons do not dwell overnight. Hospitals, hotels, rooming houses, and community-based residential facilities all have in common the feature of overnight accommodation, in contrast to a clinic which by definition is limited to the care of out-patients. § 199.9. The BZA's interpretation of "residential use" for FAR purposes can, to that extent, be reconciled with the specific definitions of "residential use" throughout the Zoning Regulations. Moreover, as discussed *supra,* the Zoning Regulations specially define terms when the common definition does not serve.

■ The dictionary definition, common understanding, legislative history, and prior construction all support the conclusion that the BZA's interpretation was not clear-ly erroneous or inconsistent with the Zoning Regulations as a whole.[9]

*Affirmed.*

9. We disagree with petitioner's suggestion that the BZA's interpretation of "residential use" as "having to do with or used as a home or dwelling" is an unconstitutionally unclear standard to administer. *Cf. Citizens Committee to Save Historic Rhodes Tavern v. D.C. Dep't of Housing & Community Development,* 432 A.2d 710, 719 (D.C.) ("exemplary architecture" standard based on objective factors not impermissibly vague), *cert. denied,* 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981).