2101 WISCONSIN ASSOCIATES, t/a
The Holiday Inn–Georgetown,
Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT
SERVICES, Respondent.

No. 89–1134.

District of Columbia Court of Appeals.

Submitted Jan. 23, 1991.
Decided Feb. 20, 1991.

Joseph R. Damato, Washington, D.C., was on the brief, for petitioner.

N. Denise Wilson–Taylor, Washington, D.C., was on the brief, for respondent.

Before SCHWELB and FARRELL, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate Judge:

Petitioner, an employer, challenges an award of unemployment compensation on the grounds that the appeals examiner improperly restricted cross-examination of the claimant-employee and also failed to make written findings of fact with respect to material contested issues. We conclude that the first claim of error provides no basis for disturbing the administrative decision, but that the second has merit; we therefore vacate the decision and remand to the agency for more specific findings of fact.

### I.

Claimant Pauline Thompson was dismissed from her job as a reservations manager at the Holiday Inn–Georgetown hotel on April 28, 1989. In accordance with standard Department of Employment Services (DOES) procedures,[1] her claim for unemployment compensation benefits led first to an informal "predetermination fact-finding interview" at which both claimant and Jeffrey Lea, Director of Personnel at the hotel, offered statements. The claims examiner ruled that claimant was not eligible for unemployment compensation benefits because she had been dismissed for "misconduct and insubordination" within the statutory definition of misconduct. *See* D.C. Code § 46–111(b)(2) (1990). Claimant appealed this decision administratively and an evidentiary hearing was held before a DOES appeals examiner. The examiner reversed the initial determination, concluding that the record showed at most "poor performance, inefficiency or incompetence," but not misconduct under the statute, and granted claimant's request for benefits. The Office of Appeals and Review in DOES upheld the examiner's decision without discussion, and this petition for review followed.

Claimant's dismissal came after a series of incidents beginning with the discovery on April 17, 1989 that, as reservations manager, she had not confirmed the number of rooms needed for a group hotel reservation. Instead of the ten rooms for four

1. *See* 7 DCMR § 305 (1986).

nights which the British Royal Air Force (RAF) actually had requested, a sales manager had erroneously set aside forty rooms for four nights for this group. By not verifying the reservation, claimant failed to catch the sales manager's mistake—indeed, the error was not noticed by anyone at the hotel until the group checked in. Holiday Inn estimated that its loss in revenue because of the RAF overbooking was at least $5000, a figure not challenged by claimant. Claimant's immediate supervisor at the time, Holly Zoba, testified that to prevent overbooking the hotel had a "cut-off date" system whereby a representative of a group was to be called by a specified time before the scheduled arrival to verify the number of rooms that would actually be needed.[2]

According to testimony by Zoba and Lea, claimant arrived an hour late for work the next day and was summoned to a meeting with Zoba about the RAF error, her tardiness, and another incident on April 17 in which she had been rude to a fellow employee.[3] The meeting resulted in a written warning to claimant which she refused to sign. Because she was visibly upset, she was given the rest of the day off; but she failed to return to work until April 26 and on that day met with Zoba and Lea to discuss her behavior. According to Zoba and Lea, claimant would not admit error concerning the RAF incident despite the financial loss to the hotel, and said she would continue "doing things exactly the way she had been doing them." Claimant's statements convinced Lea

> that she had no intention of correcting her behavior. She did not seemed [sic] at all concerned about the error that had

[been] made with the RAF booking notice which had cost the hotel probably upwards of $5,000. And she had a declared intention of not doing anything to improve her situation or do better in her job.

In addition, according to Zoba, claimant declared that she would no longer attend sales meetings, which the hotel considered "a very basic part of her job."

In her testimony claimant disputed her responsibility for the RAF mistake, asserting that another employee had made the initial error of entering the wrong number of total rooms in the ledger and that claimant simply "failed to catch the error." She denied any mistake in not verifying the number of rooms by the cutoff date, maintaining that the verification procedure did not apply when, as in this case, the booking originated with another hotel. Claimant did not contradict the employer's testimony that she had stated her intent to continue doing things as before; she claimed she had been under stress and working alone at the time of the booking incident, and had done her work to the best of her abilities. She did not deny stating that she would no longer attend sales meetings, but implied that her supervisor had accused her of disrupting past meetings ("pointing fingers" at other participants) and had indicated she would not be invited to meetings in the future.

In rebuttal Zoba and Lea reiterated that it was claimant's responsibility to confirm group reservations by the cutoff date and that the reason she was discharged was her express "refus[al] to change her ways to correct any of those mistakes[4] and pre-

---

**2.** Some days before the incident, claimant, as reservations manager, had circulated a memorandum to other employees emphasizing that "Group contacts should be educated on the importance of cut off dates and what it really means. It is very important to reiterate the importance so that our room inventory can be effectively controlled...."

**3.** Holiday Inn–Georgetown employees may obtain discounted room reservations at other Holiday Inn hotels by making their reservations at the Georgetown hotel. According to the employer's testimony, on the same day as the RAF incident a fellow worker had called to make a

reservation at another Holiday Inn hotel and Thompson treated him rudely, causing him to complain to management.

**4.** Lea testified that claimant had received an earlier written warning for failure to perform a booking correctly for the German Embassy, and that—as in the April 17 encounter with the coworker—there were "several instances in the file over the past five years indicating her argumentative and belligerent attitude in dealing with other employees of the hotel." Claimant disputed the latter assertion generally and, as to the incident with the co-worker on April 17, explained that he had merely not understood

vent them from happening again in the future."

## II.

██ Petitioner contends that the appeals examiner failed to make written findings with respect to each material contested issue of fact, as required by D.C.Code § 1–1509(e) (1987). In her written order the examiner summarized the positions of the parties, including the employer's contention that claimant had not been discharged for the April 17 error, but rather because she had refused to acknowledge the error and agree to follow proper booking procedures in the future. The examiner's findings, however, consist entirely of the following:

> After a careful review of the record, the Examiner finds claimant was discharged, but not for misconduct as that term is defined by the Act. In *Hickenbottom-vs-District of Columbia Compensation Board*, D.C.App., 273 A.2d 475, 477–78 (1971), the court defined "misconduct must be an act of wanton, or willful disregard of the employer's interest, a deliberate violation of the employer's rules, or disregard of standards of behavior which the employer has the right to expect of its employees, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design[,] or show an intentional and substantial disregard of the employer's interest ..." The record as a whole fails to show claimant acted in this manner. *The law requires more than poor performance, inefficiency or incompetence to sustain a finding of misconduct.* The required burden of proof has not been met by the employer and the record fails to show misconduct by the claimant. [Emphasis added.]

This is plainly unsatisfactory. As the examiner recognized, the employer did not contend that claimant was fired for "poor performance, inefficiency or incom-petence,"[5] but rather for her refusal in the April 26 meeting to acknowledge the booking error and insistence that she would go on doing things as before, except that she would no longer attend sales meetings. Yet the examiner made no findings concerning the April 26 meeting. She neither credited nor discredited the testimony of Zoba or Lea about what claimant said there. Thus she made no finding whether claimant in fact had declared her intention not to follow prescribed confirmation procedures or to attend sales meetings. Nor, assuming an affirmative answer to these questions, did the examiner find whether claimant's conduct on April 26 (rather than merely the booking error) caused her discharge and whether, if it did, that behavior rose to the level of statutory misconduct. The examiner likewise made no finding as to the other factor the employer assertedly relied on, claimant's rude treatment of fellow employees; there was no finding whether this incivility occurred, played a role in the discharge, or by itself or in combination with other behavior rose to the level of misconduct under the statute.

██ It is fundamental that "[w]e must know what a decision means before the duty becomes ours to say whether it is right or wrong." *United States v. Chicago, M. & St. P. & Pac. R.R.*, 294 U.S. 499, 511, 55 S.Ct. 462, 467, 79 L.Ed. 1023 (1935). For this court to perform meaningful review of an agency decision, the administrative findings must "resolve basic issues of fact raised by the evidence adduced at the hearing." *Newsweek Magazine v. District of Columbia Comm'n on Human Rights*, 376 A.2d 777, 784 (D.C.) (citation omitted), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 729, 54 L.Ed.2d 758 (1977). Specifically, "the decision must state findings of fact on each material, contested factual issue." *Perkins v. District of Columbia Dep't of Employment Servs.*, 482 A.2d 401, 402 (D.C. 1984). "[A] reiteration of the evidence is

---

her English. (From Zoba's testimony it is apparent that the co-worker was Brazilian.)

**5.** This court has held that "[o]rdinary negligence or an honest mistake in judgment will not suf-

fice as a basis for disqualification for misconduct." *Jadallah v. District of Columbia Dep't of Employment Servs.*, 476 A.2d 671, 675 (D.C. 1984) (citation omitted).

not a finding of fact," nor "will generalized, conclusory or incomplete findings suffice." *Newsweek Magazine, supra.* And when an agency has not provided findings on a material issue, this court "cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue." *Colton v. District of Columbia Dep't of Employment Servs.,* 484 A.2d 550, 552 (D.C.1984) (citation omitted).

■■■ The examiner's analysis leaves us without the requisite foundation on which to review the agency's conclusion that claimant engaged in no misconduct warranting denial of unemployment benefits. We must, therefore, remand the case to DOES for further proceedings, leaving to its determination whether the necessary findings can be made on the record as constituted or whether additional testimony is needed.[6]

The decision of the Director is

*Reversed.*

---

**6.** We reject the employer's contention that the evidentiary hearing must be reopened because the examiner imposed undue limitations on the employer's right to examine claimant as an adverse witness. We agree that the examiner's conception of the scope of cross-examination was unduly restrictive. Contrary to the examiner's repeated reference to what claimant did not "bring up in her direct testimony," cross-examination to impeach is not generally limited to matters brought out in the direct examination. MCCORMICK ON EVIDENCE § 22 (3d ed. 1984); *see* D.C.Code § 1–1509(b) (party to contested administrative proceeding may "conduct such cross-examination as may be required for a full and true disclosure of the facts"). Indeed, the employer may call the claimant as an adverse witness "where such technique appears to be a feasible method of establishing relevant facts." *Washington Times v. District of Columbia Dep't*

*of Employment Servs.,* 530 A.2d 1186, 1190 (D.C. 1987).

Whatever restrictions the examiner imposed on cross-examination of claimant, however, we cannot conclude that petitioner was denied the opportunity to obtain a full and true disclosure of the facts. When petitioner's counsel objected to the restrictions by pointing out the employer's right to call claimant as an adverse witness and go beyond her direct testimony, the examiner replied, "[I]f you do have that type of testimony, then we'll just postpone and come back at a later date." This ruling betrays no refusal to let petitioner question the employee fully at a later time, though in the awkward format of something like rebuttal. Petitioner never sought to recall claimant as a witness, and hence cannot claim prejudice from the examiner's restrictions.