**Phil MENDELSON, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

**Woodland Limited Partnership, Intervenor.**

**No. 92–AA–619.**

District of Columbia Court of Appeals.

Argued Feb. 7, 1994.

Decided Aug. 8, 1994.

Richard B. Nettler, Washington, DC, for petitioners.

Charles L. Reischel, Washington, DC, filed a statement in lieu of a brief for respondent.

Louis P. Robbins, Washington, DC, for intervenor.

* Chief Judge Wagner was an Associate Judge of this Court at the time of argument. Her status changed to Chief Judge on June 14, 1994.

Before WAGNER,* Chief Judge, STEADMAN, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

Petitioners Phil Mendelson and others seek this court's review of the action of the District of Columbia Board of Zoning Adjustment (BZA) in dismissing as untimely the appeals of Mendelson, et al. and the Woodland–Normanstone Neighborhood Association (the "Association") challenging the issuance of revised building permits to Intervenor Woodland Limited Partnership ("Woodland") for two lots located near Rock Creek Park in the District. With regard to one of the several issues petitioners raise—whether the rear yard depths met zoning requirements—we agree with petitioners that the appeals to the BZA were timely, and to that extent we reverse and remand for further proceedings. Upon remand, the BZA shall also determine whether issues concerning side yard, lot width, use, and height requirements were raised in timely fashion and, if so, conduct appropriate further proceedings on those issues as well.

As the outcome of this appeal turns on timing, we will set out the chronology of relevant actions in some detail. On June 8, 1988, Woodland applied for permits to build seven single-family residences on property located in Square 2140, Lots 37 to 43 which is bordered by Woodland Drive, Rock Creek Drive, and Normanstone Drive, Northwest, in the District. The Zoning Administrator approved the applications and on August 11, 1988, Woodland obtained building permits for the planned residences from the Department of Consumer and Regulatory Affairs ("DCRA").[1] Despite the fact that five of the seven lots abutted or fronted Rock Creek Park, the permit applications were not referred to the Commission of Fine Arts ("Commission") for review as required by the Shipstead–Luce Act, D.C.Code § 5–410 (1988

1. The Zoning Division later approved Woodland's request to resubdivide lots 39 and 40 to create lots 45 and 46 respectively.

Repl.).[2] Two weeks following the Zoning Administrator's issuance of the building permits, Woodland began construction on lots 37 and 38.

Subsequently, area residents discovered that the Commission of Fine Arts had not considered the project. Thereafter, the Commission reviewed Woodland's building permit applications. On January 25, 1989, the Commission informed DCRA that it disapproved Woodland's plans. On February 10, 1989, the U.S. District Court for the District of Columbia granted the Commission's application for a temporary restraining order halting construction on the property except for lots 37 and 38. The Commission did not seek a restraining order against construction on these lots because it believed that DCRA had overlooked the matter and Woodland had already completed substantial construction on them.

On March 23, 1989, the Association forwarded a letter to Mr. Hampton Cross, Administrator of the Building and Land Regulation Administration, alleging that the houses being constructed on lots 37 and 38 violated the zoning regulations. The Association asserted that there were violations with respect to rear yard, side yard, use, and height requirements, and questioned the adequacy of lot widths. The Association requested the issuance of a stop-work order for all construction on the property. In a second letter to Mr. Cross of March 31, 1989, the Association argued:

> The deck on lot 38 protrudes into the rear yard such that there is no longer a 25–foot rear yard and the side yards on the plans violate the 8–foot side yard requirement. Indeed, the plans show the distance from the side yard to the other lots as only 7′8″. Also, you should note that while the plans show the chimney as protruding 1′8″ into the side yard, [our] measurement of the

chimney shows that it projects 3 feet into the side yard.

The Building and Land Regulation Administration issued a stop-work order on March 28, 1989, as to all lots, but lifted it on April 4, 1989, upon Woodland's submission to the Permit Processing Division of DCRA of revised plans which reflected the actual construction on the lots. Upon reviewing the revised plans and inspecting the lots in question, DCRA found that the revised plans were in accordance with the zoning regulations and issued revised building permits for lots 37 and 38 to Woodland on April 4, 1989. The new building permit for lot 37 specified that it authorizes revisions to attic plans (electric and floor plans and roof), location and elevation of retaining walls, rear terrace, roof trusses detail, and rear deck. The new permit for lot 38 was virtually identical.

On May 26, 1989, the Association appealed that action to the BZA, alleging that the development did not comply with the zoning regulations as to rear yard, side yard, use, and height requirements. On June 5, 1989, Phil Mendelson, et al. also appealed to the BZA maintaining that the subdivision plan generally did not comply with the zoning regulations.[3]

The BZA consolidated the two appeals and set a hearing for September 27, 1989. Participating as an intervenor at the hearing, Woodland moved for dismissal on the ground that the appeals were untimely, in that eight months had passed since petitioners had been placed on notice that the building permits had been issued to Woodland. In response, Mendelson and the Association contended that their appeal was timely as it was filed within two months after Woodland obtained revised building permits for lots 37 and 38.

The BZA deferred its decision on the motion to dismiss until the conclusion of the hearing on the merits. At that time, it found

---

**2.** "[W]hen application is made for permit for the erection ... of any building, any portion of which is to front or abut upon the grounds of ... Rock Creek Park, ... the plans therefor, so far as they relate to height and appearance, color, and texture of the materials of exterior construction, shall be submitted by the Mayor of the District of Columbia to the Commission of Fine Arts [for its review and recommendations]." D.C.Code § 5–410 (1988 Repl.).

**3.** On this appeal, the Association and Mendelson challenge only the dismissal of their appeals from the issuance of the building permits for lots 37 and 38.

that petitioners had constructive notice of the right to appeal when construction began on lots 37 and 38 in August 1988. The BZA reasoned that having received said notice, petitioners were obliged to proceed expeditiously to inquire about the appropriateness of the approval of the subdivision and the issuance of building permits. Ultimately, the BZA concluded that petitioners' appeals were filed after an unreasonable period of time under the circumstances and thus were untimely. Therefore, BZA dismissed the appeals regarding lots 37 and 38. It is that conclusion of untimeliness that we examine on this appeal.

 The timely filing of an appeal with the BZA is mandatory and jurisdictional. *See Woodley Park Community Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 490 A.2d 628, 635 (D.C.1985) ("if [petitioner's] appeal was not timely filed, the BZA was without power to consider it"); *Goto v. District of Columbia Bd. of Zoning Adjustment*, 423 A.2d 917, 923 (D.C.1980) ("question of timeliness is jurisdictional"). As we stated in *District of Columbia Pub. Employee Relations Bd. v. District of Columbia Metro. Police*, 593 A.2d 641 (D.C.1991): "The time limits for filing appeals with administrative adjudicative agencies, as with courts, are mandatory and jurisdictional matters [citing cases]." *Id.* at 643. "Because the rules of the BZA adopt no specific time limit on appeals, a standard of reasonableness is applied in determining whether an appeal is timely." *Woodley Park Community Ass'n*, *supra*, 490 A.2d at 636 (citations omitted). Under the reasonableness standard, "the time for filing an appeal commences when the party appealing is chargeable with notice or knowledge of the decision complained of." *Id.*

 In the instant case, we recognize that "BZA's conclusion is entitled to additional deference because the agency was interpreting its own internal rule of procedure rather than the zoning regulations." *Id.* at 636 n. 20 (citing *Dupont Circle Citizens Ass'n v. District of Columbia Zoning Comm'n*, 431 A.2d 560, 565 (D.C.1981)). *See also United Unions, Inc. v. District of Columbia Bd. of Zoning Adjustment*, 554 A.2d 313, 318 (D.C.

1989); *Dietrich v. District of Columbia Bd. of Zoning Adjustment*, 320 A.2d 282, 286 (D.C.1974).

Within this framework, we consider petitioners' argument that the BZA erred in concluding that petitioners were chargeable with constructive notice of their right to appeal at the time construction began on lots 37 and 38. The Board, in its order, summarized the parties' respective positions as follows:

11. Responding in opposition to the Motion to Dismiss, [petitioners] stated [they are] appealing the decision made on April 4, 1989 to approve the revised plans for lots 37 and 38. [Petitioners] point[ ] out that the appeal was timely filed on May 26, 1989, less than two months after this decision was made.

12. The intervenor [Woodland] stated, however, that the errors alleged by [petitioners] in the appeal relate to rear yard, side yard, use and height requirements. The only revision made to the plans respecting the claimed errors was in connection with the rear yard. There were no changes respecting side yard, use or height. These remained unchanged from the plans for which the original permit was issued on August 11, 1988. Therefore, the intervenor maintains that [petitioners are] actually appealing the original decision. Since the appeal was filed more than nine months after the original decision date and notice of the decision, the appeal, is in the intervenor's view, untimely.

 Following its recitation of the parties' respective positions, BZA concluded that petitioners had constructive notice of their rights to appeal at the time Woodland began construction on the two lots, and a resulting obligation to inquire expeditiously about the appropriateness of the subdivision and the decision to issue building permits. BZA's conclusion is flawed in two respects. First, with respect to the rear yard issue, BZA acknowledges that on March 27, 1989, Woodland submitted applications with the DCRA for revised building permits which included modifications to the rear yards of the two lots. On April 4, 1989, DCRA approved these changes to the rear yards and issued revised building permits to Woodland. Peti-

tioners' appeal was filed May 26, 1989, approximately two months after the revised building permits were issued. The chronology of these events demonstrates that petitioners were not "chargeable with notice" of the approval of the revised building permits pertaining to the rear yard modifications until April 4, 1989.[4] *See generally Woodley Park Community Ass'n, supra,* 490 A.2d at 636–37 (petitioners were on notice of revised plans reducing the number of parking spaces when the certificate of occupancy that incorporated the new calculations was subsequently issued).

■ The two month interval between notice of rear yard modification and petitioners' filing of an appeal cannot be deemed unreasonable under these circumstances. *See Goto, supra,* 423 A.2d at 924 (two month delay in filing appeal was reasonable). For this reason, we conclude that the BZA's dismissal of petitioners' appeal with respect to the rear yard issue was plainly erroneous and requires us to remand this aspect of the proceedings to the Board for its resolution on the merits.[5]

■ A second shortcoming in the BZA's conclusion that petitioners' appeals were untimely filed is that the Board failed to make the findings of fact necessary to support an implicit underpinning of its ruling, *viz.,* that revisions to the plans approved with the issuance of the April 1989 permits did not affect lot width, side yard, use, or height specifications. As indicated in the Board's order, there was a dispute as to whether, as Woodland maintained, petitioners were appealing from DCRA's original issuance of building permits in August 1988 or whether petitioners were, as they assert, appealing from issuance in April 1989 of permits which contained or were based upon material changes with respect not only to rear yard

but also other features. We note that, facially, the April 1989 permits do not appear to modify the original provisions concerning side yard, lot width, use, or height.[6] The BZA, however, made no finding of fact with respect to this contested matter. We cannot regard the statement in paragraph 12 of the BZA's final order, quoted above, as such a finding because it is set forth in a summary of intervenor's position, and does not purport to be a finding of fact that the only revision to the plans approved in April of 1989 was with respect to rear yard.

■ In reviewing a BZA decision, we must determine "(1) whether the agency has made a finding of fact on each material contested issue of fact; (2) whether substantial evidence of record supports each finding; and (3) whether conclusions legally sufficient to support the decision flow rationally from the findings." *Glenbrook Road Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 605 A.2d 22, 31 (D.C.1992) (quoting *Levy v. District of Columbia Bd. of Zoning Adjustment,* 570 A.2d 739, 746 (D.C.1990)); *see also Draude v. District of Columbia Bd. of Zoning Adjustment,* 582 A.2d 949, 953 (D.C. 1990); *George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment,* 429 A.2d 1342, 1345 (D.C.1981); D.C.Code § 1–1509(e) (1992 Repl.). "Generalized, conclusory or *incomplete findings* are insufficient; subsidiary findings of basic fact on all material issues must support the end result in a discernible manner." *Levy, supra,* 570 A.2d at 746 (emphasis added) (citation omitted).

■ Since the Board failed to make findings on the issue of whether the April 1989 permits had the effect of modifying the initial permits regarding side yard, lot width, use, or height, this court " 'cannot fill the gap by making its own determination from the record, but must remand the case for findings

---

**4.** In its brief, Woodland states that "[t]he only revision made to the plans in 1989 respecting the claimed errors was in connection with the rear yard."

**5.** Although Woodland invites us to apply what it calls a "subjective certainty" test as to what the Board would probably decide on remand, we decline to do so, as our role in reviewing an administrative agency's decision is clear. *See*

*Ros Express, Inc. v. District of Columbia Dep't of Employment Servs.,* 602 A.2d 659, 661 (D.C. 1992); *see also Securities & Exchange Comm'n v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).

**6.** Petitioners argue that the scope of the revised permits is elucidated by the working plans on which they were based.

on that issue.'" *2101 Wisconsin Assoc. v. District of Columbia Dep't of Employment Servs.,* 586 A.2d 1221, 1225 (D.C.1991) (quoting *Colton v. District of Columbia Dep't of Employment Servs.,* 484 A.2d 550, 552 (D.C. 1984)); *Levy, supra,* 570 A.2d at 746; *see also Newsweek Magazine v. District of Columbia Comm'n on Human Rights,* 376 A.2d 777, 784 (D.C.), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 729, 54 L.Ed.2d 758 (1977) ("reiteration of the evidence [or a party's contention] is not a finding of fact"). Such findings are necessary to a conclusion as to whether the appeals to the BZA regarding those issues were timely. Accordingly, we remand this matter to the Board for further proceedings consistent with this opinion.

*So ordered.*