**Hugh J. BEINS, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

**Allan Fox, et al., Intervenors.**

**No. 88–1479.**

District of Columbia Court of Appeals.

Argued Jan. 9, 1980.
Decided March 30, 1990.

---

Hugh J. Beins, pro se.

Michael A. Cain, Washington, D.C., with whom Kathryn J. Hess, was on the brief, for intervenors.

Martin B. White, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel at the time, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the memorandum filed in lieu of brief, for respondent.

· Before ROGERS, Chief Judge, and TERRY and FARRELL, Associate Judges.

FARRELL, Associate Judge:

In this case, we reverse an order of the Board of Zoning Adjustment (the Board) holding that petitioners' delay of thirty-two days in filing an appeal from a decision of the Zoning Administrator barred the appeal on the ground of laches. Although we do not conclude that a delay of this brief a duration may never justify a determination of laches, we hold that an exceptional showing of both prejudice and unreasonableness of the delay will be required, *see American Univ. Park Citizens Ass'n v. Burka*, 400 A.2d 737, 740 (D.C.1979), before a delay of this length will be deemed to forfeit a right to appeal under a doctrine designed "to prevent the enforcement of stale claims." *Id.* Because that showing has not been made in this case, we reverse the Board's order and remand for consideration of petitioners' claims on the merits.

I.

As the Board found, this litigation had its genesis in the Zoning Administrator's issuance of a permit on August 22, 1983, allowing the construction of a rear addition to premises at 3813 Jocelyn Street, N.W., owned by intervenors, the Foxes. The house in question is a single-family detached dwelling built before 1958. In approximately March of 1983, the Foxes hired a designer to develop a proposal to enlarge an existing family room, remove the existing outdoor deck and construct a new one, enlarge the existing kitchen, and create an interior hallway connecting the kitchen to the family room. On May 6, 1983, after approval of the plans by the owners, the designer reviewed the preliminary drawings with staff members of the Zoning Review Branch, Department of Consumer and Regulatory Affairs, for compliance with the zoning regulations. The designer was informed that the plan conformed with the applicable regulations. A second review of the plans by the Zoning Review Branch led to similar approval, and on August 22, 1983, the Foxes submitted final plans and an application for a building permit to the office of the Zoning Administrator, which issued a building permit that day. The Foxes then accepted bids on the proposed construction, selected and hired a contractor, and secured financing to proceed with the project. As the Board found, they entered into contracts or binding com-

mitments for custom-made materials for an overall financial obligation of between $70,-000 and $80,000.

Meanwhile, the zoning regulations had been amended in a way that adversely affected the Foxes' project. The house was a nonconforming structure in that it had been built before 1958 and did not conform to the twenty-five foot minimum rear yard requirement for properties, such as this one, zoned R–1–B.[1] Effective August 5, 1983, the zoning regulations pertaining to nonconforming structures were amended to provide that improvements to such structures could not increase or extend existing nonconformities or create new ones. 11 DCMR § 2001.3(c) (1987). Neither the designer nor the Foxes were aware of this change in the regulations; apparently the zoning officials who issued the building permit on August 22 also were unaware of its effect on the Foxes' application. Accordingly, on October 24, 1983, construction began on the rear addition, and on that day the existing family room (which was above the garage) and deck were demolished, and structural work began on the footings and piers for the new deck.

Petitioners, the Beins', who own a home on the other side of a twelve-foot public alley behind the Foxes' rear yard, noticed the work and immediately contacted zoning officials and other representatives of the District of Columbia government to learn the nature of the construction. On October 26, Mr. Beins met with Joseph Bottner, Jr., the Deputy Zoning Administrator, and protested the issuance of the building permit without prior notice to the Beins' as neighboring property owners, and as violating the rear yard requirements of the zoning regulations. That same day, Bottner advised the Foxes and their designer by letter that a review of the plans had disclosed a potential problem of compliance with the rear yard requirement; at the same time, he instructed the chief of the Construction Inspection Branch to issue a stop work

order on the premises "until issues relative to the rear yard are resolved." A stop-work order was issued that day.

The next day, October 27, the Foxes and the designer met with Zoning Administrator James Fahey and Assistant Corporation Counsel Jonathan Farmer. The Foxes detailed the steps they had taken to ensure compliance with the zoning regulations, the nature and extent of the work completed to date, and the financial obligations they had incurred in reliance on issuance of the building permit. Farmer advised Fahey that, given the work already performed,[2] the District of Columbia would be estopped from revoking the Foxes' permit. At the conclusion of the meeting, therefore, Fahey ordered the stop work order rescinded and allowed the construction to continue.

Bottner informed the petitioners that day of the results of the meeting and of their right to appeal the rescission to the Board. Upon receiving this notice, Mr. Beins wrote a letter to the Mayor of the District of Columbia, with a copy to members of the Council of the District of Columbia and Deputy Zoning Administrator Bottner, complaining of the zoning violations and asking for an opportunity to meet with Fahey and Farmer. Beins testified, without contradiction, that during the next two and a half weeks he was in "constant contact" with Fahey and Bottner, but was told again that, although the construction permit had been erroneously issued, the agency was estopped from terminating the construction. Beins also contacted his Advisory Neighborhood Commission to obtain its evaluation of his claim and to gain its support,[3] which resulted in a letter from the Commission to the Board on December 6 expressing concerns about the proper issuance of the permit. Meanwhile, Beins prepared his notice of appeal to the Board for filing on November 25 (the notice of appeal bears that date), but did not file it until Monday, November 28, because of the

---

1. The attached garage and family room were within seven feet of the rear property line.

2. Demolition of the existing deck and family room had been virtually completed.

3. For the role of Advisory Neighborhood Commissions, see D.C.Code § 1–261(a) & (d) (1987).

intervening Thanksgiving weekend.[4] In response to a letter of November 30 from the Executive Director of the Board requesting copies of the decisions appealed from, Beins answered on December 2 by requesting, among other things, "that this appeal be expedited and that the illegal construction at 3813 Jocelyn Street, N.W., be stopped immediately pending a decision of the BZA." On December 6 he again "urgently request[ed]" expedition of the appeal, a request the Board denied on December 7. Notwithstanding this activity, between October 27 and November 28, the Beins' did not tell the Foxes of their continued opposition to the construction or their intention to appeal.

On January 30, 1984, the Foxes intervened in the appeal and moved to dismiss it on the basis of estoppel and laches. On May 29, 1984, following a February hearing, the Board dismissed the appeal on the ground that the District of Columbia was estopped from revoking the issued building permit. Petitioners appealed that decision to this court, which remanded the case on December 12, 1984, at the request of the Corporation Counsel, who took the position that estoppel should not bar a neighboring property owner (as distinct from the District) from asserting rights under the zoning regulations. The Board acceded to this position and conducted further hearings on the issue of laches. On November 8, 1988, it dismissed the appeal again on that ground, finding that the Beins' delay in appealing to the Board "was not reasonable" or adequately explained, and that it prejudiced the Foxes who "reasonably continued on the course of the authorized construction, with the result that the construction and the expenditures of [the Foxes] reached a very substantial level."

The Board found, in particular, that "[n]o later than October 27, 1983, the [Beins'] had sufficient knowledge and information to make it reasonable for them to initiate an appeal to this Board," yet they filed the appeal "approximately three months after the issuance of the building permit, and

one month after the decision to rescind the order." Moreover, the Board found that the erroneous granting of the permit should have been apparent to the Beins' from the beginning:

> With the arguable exception of the stairs leading from the new deck, *every aspect of the construction which enlarged the existing structure was almost entirely in violation of 11 DCMR 2001.3.* This includes the addition to the kitchen, the new deck, and the cantilevered portion of the new family room. Concrete footings for at least a portion of the work were in place on October 26, 1983. As early as November 7, substantial work on the deck was in progress. [Emphasis added.]

Noting that Mr. Beins was a practicing attorney in the District of Columbia, the Board found that between October 27 and November 28, 1983, the Beins' "engaged in a wide variety of action and communication with various District of Columbia officials," none of whom had the authority vested in the Board to entertain zoning appeals. Nor did the Beins' communicate "their very strong feelings and continuing concerns" to the Foxes. By November 28, the Board found:

> [D]emolition of the previously existing family room and deck had been completed; siding had been removed from the wall next to the kitchen; the new family room had been framed in, and was under roof, although shingling of the roof was not complete until December 3; the floor of the kitchen addition had been installed; and, except for the stairs, the new deck was complete.

In financial terms, by December 6, 1983, the Foxes "had obligated themselves to pay $60,000, and had expended $40,000." In sum, the Board found that "none of the reasons which [the Beins'] have set forth as a cause for their delay in appealing are reasonable justification for the delay in light of its effect on [the Foxes]."

---

4. Beins testified that he called the BZA on the Friday after Thanksgiving to find out if the office was open, but that no one answered the telephone.

## II.

In *American Univ. Park Citizens Ass'n v. Burka, supra,* this court summarized the doctrine of laches as follows:

> Laches is the principle that "equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant." It was developed to promote diligence and accordingly to prevent the enforcement of stale claims. Laches will not provide a valid defense, however, unless two tests are met: the defendant has been prejudiced by delay and that delay was unreasonable. In the absence of an analogous statute of limitations, the party asserting the defense has the burden of establishing both elements.

400 A.2d at 740 (citations omitted). As the Board acknowledged in this case, the defenses of estoppel and laches are judicially disfavored in the zoning context because of the public interest in enforcement of the zoning laws. *Goto v. District of Columbia Bd. of Zoning Adjustment,* 423 A.2d 917, 925 (D.C.1980); *Wieck v. District of Columbia Bd. of Zoning Adjustment,* 383 A.2d 7, 10 (D.C.1978). For this reason, laches "is rarely applied [in this context] 'except in the clearest and most compelling circumstances.'" *Wieck, supra,* 383 A.2d at 11 (citation omitted). In *Burka,* we also stated that, although factual findings relating to prejudice to the defendant caused by the delay and to the plaintiff's (petitioner's) earlier awareness of the claim will receive deferential appellate review, "[w]hether the facts, taken together, are sufficient to sustain the defense of laches ... is a question of law" to be answered *de novo* by the appellate court. 400 A.2d at 741. Accordingly, in the context of agency action, this court must reverse a determination of laches if it is "not in accordance with law." D.C.Code § 1–1510(a)(3)(A) (1987).

## III.

In this case, we cannot sustain the Board's conclusion barring petitioners' claim. The Beins' delay of one month in appealing the Zoning Administrator's action was not so clearly unreasonable and prejudicial to the Foxes as to permit application of a doctrine disfavored in the zoning context. Laches, as the court said in *Burka,* was developed to prevent "the enforcement of stale claims," 400 A.2d at 740; it asks "whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair." *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). Fairness, however, will bar application of the doctrine where the result would be unjust. For unlike a rule of limitations on an action or a right of appeal, which may operate harshly, laches does not: "[t]he statute [of limitations] frequently works great practical injustice—the doctrine of laches, never." *Patterson v. Hewitt,* 195 U.S. 309, 317, 25 S.Ct. 35, 36, 49 L.Ed. 214 (1904). We must inquire, therefore, whether petitioners "slept on their rights" by allowing one month (thirty-two days, to be exact) to pass before they appealed the Zoning Administrator's rescission of the stop-work order. For the reasons that follow, we conclude that they did not.

### A.

The Board found that the Beins' filed their appeal "approximately three months after the issuance of the building permit, and one month after the decision to rescind the order." In determining the reasonableness of the Beins' inaction, however, the Board could not properly rely on the three-month period between the issuance of the building permit and the start of construction. Nothing in the record suggests that the Beins' had notice, or reasonably should have had notice, of the plans for construction until the work actually began on October 24, 1983. The Beins' contacted zoning officials that day and two days later met with the Deputy Zoning Administrator, resulting in the issuance of the stop-work order. The period during which petitioners had no actual or constructive knowledge of the Foxes' plans, therefore, "cannot be held against them." *Goto, supra,* 423 A.2d at 925.

The first question to be answered, accordingly, is whether the thirty-two days

that elapsed between October 27, when the Beins' concededly knew the stop-work order had been rescinded and of their right to appeal to the Board, and November 28 constituted unreasonable delay. In *Goto, supra,* the court pointed out that the Board's rules contain no specific time limit on appeals, but instead require only that appeals be filed in a "timely" manner, and that in interpreting this limit "a reviewing court should apply a standard of reasonableness." 423 A.2d at 923. In that case the court sustained as a proper exercise of discretion the Board's conclusion that an appeal lodged two months after issuance of the agency's order was jurisdictionally timely.[5] *Id.* at 924; *see also Woodley Park Community Ass'n v. District of Columbia,* 490 A.2d 628 (D.C.1985) (interval of one month between notice of Administrator's decision and filing of appeal reasonable).

The Foxes correctly point out, however, that as we made clear in *Goto,* "[l]aches presents a question distinct from that of the timeliness of ... appeal [and] ... may bar consideration of an appeal which, for jurisdictional purposes, would be timely...." 423 A.2d at 925 n. 16. Indeed, in *Goto* we held the same appeal which the Board had found timely for jurisdictional purposes to be barred by laches, reversing the Board's contrary determination. Significantly, however, we did so only by looking "to the entire course of events" and after concluding that "[d]uring the *nine* months between their discovery of [the Administrator's] decision and the filing of an appeal [the intervenors] had knowledge of their rights and an opportunity to assert them." *Id.* at 925 n. 16, 926 (emphasis added). Moreover, although we cited decisions by other courts which had applied laches to bar suits filed after considerably shorter periods of delay, in none of those cases—and in none that the Foxes have cited to us—was laches held to bar an action commenced as little as one month

after the agency action complained of. It is true, as intervenors remind us, that length of delay itself is not decisive. *See id.* at 925 (citations omitted) ("'[t]he principal element in applying the doctrine of laches is the resulting prejudice to the defendant, rather than the delay itself'"). Nevertheless, we must separately assess the reasonableness of the delay, *Burka, supra,* 400 A.2d at 740; *Wieck, supra,* 383 A.2d at 11, and there is nothing inherently unreasonable in a delay of one month in appealing an administrator's decision.

The Board acknowledged that during the month in question the Beins' "engaged in a wide variety of action and communication with various District of Columbia officials," but found inexcusable their failure to take the critical step of noting an appeal. We are not prepared to say, however, that this failure counts decisively in assessing petitioners' diligence during the month in which they sought informally to reinstate the stop-work order. The record is undisputed that, following rescission of the order, the Beins' immediately requested, and were granted, meetings with zoning officials in which they protested the decision to allow construction to proceed. Their actions reflected—as the Board acknowledged—"their very strong feelings and continuing concerns" about the construction, and not the neglect of one's grievance that is characteristic of laches. Mr. Beins was not a zoning lawyer, and we think it understandable that he would spend several weeks seeking advice about the merits of his complaint before initiating the appeal process. Indeed, a delay of that length and for that purpose is essentially what a statutory appeal period contemplates.

Finally, in holding that petitioners' delay was unreasonable, the Board pointed to, as it were, the open and notorious nature of the zoning violations, stating: "[w]ith the arguable exception of the stairs leading to the new deck, every aspect of the construction which enlarged the existing structure

---

**5.** In *Goto,* we deferred to the Board's decision to calculate the time for appeal by reference to a written order of the Zoning Administrator, although the appellant had received oral notice of the ruling six months earlier. 423 A.2d at 924.

In the present case, neither party disputes that the time for appeal commenced on October 27 when the Zoning Administrator orally rescinded the stop-work order and notified petitioners by telephone.

was almost entirely in violation of 11 DCMR 2001.3." In the abbreviated temporal context of this case, however, we conclude that this fact deserves little weight. The flagrancy of the violations[6] no more justifies the conclusion that the Beins' were careless in not appealing sooner than it does the conclusion that the Foxes acted rashly, even though equipped with a permit and an "estoppel" ruling, in proceeding full-throttle with the construction without ascertaining the intentions of neighbors who they knew had objected. We decline to draw either conclusion. The manifest illegality of the construction, if it proves anything, merely illustrates why courts are reluctant to apply concepts of laches and estoppel in the context of the zoning laws. *See Interdonato v. District of Columbia Bd. of Zoning Adjustment,* 429 A.2d 1000, 1003 (D.C.1981).

## IV.

We turn next to the issue of prejudice. Unquestionably, prejudice is the primary factor in a determination of laches. *Goto, supra,* 423 A.2d at 925; *Gutierrez v. Waterman,* 373 U.S. 206, 215, 83 S.Ct. 1185, 1191, 10 L.Ed.2d 297 (1963) ("The test of laches is prejudice to the other party"). The Board found that by the time petitioners noted their appeal, the previously existing deck and family room had been demolished, the new family room had been framed in and was under roof, substantial work had been done on the kitchen addition, and the new deck had been completed. In dollar terms, by December 6 the Foxes "had obligated themselves to pay $60,000, and had expended $40,000." There is little doubt that by November 28 the construction was substantially along the way to completion. When we examine the record, however, this case demonstrates the acute difficulty of assessing reasonableness of delay in light of prejudice, and of assigning blame for prejudice, when the delay has been as short as it was here. At oral argument counsel for the Foxes candidly acknowledged that the prejudice to them would have been substantial even if the Beins' had noted their appeal immediately after October 27. The written record bears this out. Demolition of the existing deck and family room was finished before an order had issued from which the Beins' could appeal; indeed, it was that work which first alerted them to the Foxes' project. Equally significant, in a supplemental memorandum filed in support of their motion to dismiss the appeal to the Board, the Foxes set forth improvements they had "made in justifiable reliance on" the building permit and the administrator's estoppel ruling, claiming that by *October 27* they had made the following "contracts/*binding commitments* for other materials" (emphasis added):

—custom-made windows and doors ordered

—custom kitchen floor tile ordered

—custom kitchen cabinets ordered

—money borrowed/lines of credit arranged

—family room completely demolished, exposing living room wall to the elements.

Without our faulting the Foxes for having entered these commitments relying upon the building permit and the estoppel ruling, the fact remains that they had invested substantially—and to some extent irrevocably—in the project before petitioners could even protest the construction to the Zoning Administrator, much less to the Board. It is doubtless true that the costs to the Foxes mounted daily as the Beins' explored the wisdom of an appeal, but we are not disposed to weigh that fact heavily when, within the short time-frame of this case, it is impossible to quantify the prejudice traceable to any portion of the delay.

We hold, therefore, that the Board's determination of laches is "not in accordance with law," § 1–1510(a)(3)(E), and we remand to the Board for consideration of the Beins' challenge to the administrator's deci-

---

6. The Foxes, of course, dispute this characterization and maintain that the construction did not violate the zoning regulations—a fact they rightly contend they have not had the opportunity to prove since the Board dismissed the appeal on grounds of laches.

sion on the merits.[7] Notwithstanding the Board's "finding"—reached for purposes of its laches decision only—that the construction seriously violated the zoning regulations, the Foxes must be given an adequate opportunity to demonstrate that it was not unlawful. Moreover, even if the alterations were found to be unlawful in one or more respects, this does not necessarily mean the improvements must be demolished. The Foxes would not be precluded from applying for an area variance, and in consideration of that application, both their economic prejudice and the acts of the zoning officials giving rise to the estoppel decision would be relevant factors. *See de*

*Azcarate v. District of Columbia Bd. of Zoning Adjustment,* 388 A.2d 1233, 1239 (D.C.1978). In this case, we hold only that intervenors have failed to make the exceptional showing necessary to support application of laches to petitioners' delay of thirty-two days in noting an appeal.

*Reversed.*

---

**7.** We reject completely petitioners' contention that the procedures by which the construction permit was issued, and the stop work order issued then rescinded, violated due process.