**WASTE MANAGEMENT OF MARYLAND, INC.,**
Petitioner,

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT,**
Respondent.

No. 00–AA–770.

District of Columbia Court of Appeals.

Argued May 15, 2001.
Decided July 5, 2001.

---

Paul J. Kiernan, with whom Mary Carolyn Brown, Washington, DC, was on the brief, for petitioner.

James C. McKay, Jr., Senior Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before TERRY, GLICKMAN, and WASHINGTON, Associate Judges.

GLICKMAN, Associate Judge:

After the Zoning Administrator denied its application for a certificate of occupancy to run a solid waste handling facility, Waste Management of Maryland, Inc., waited three years before taking an appeal to the District of Columbia Board of Zoning Adjustment ("BZA"). The BZA dismissed the appeal as untimely. Seeking

reversal of that decision, Waste Management argues that its delay in appealing was justified because the District directed it to pursue alternative administrative approaches in the interim to obtain an occupancy certificate. We agree with the District, however, that the BZA was without jurisdiction because Waste Management failed to note its appeal within a reasonable time. We take this opportunity to explicate the requirement of a "timely" appeal.

## I.

In November 1995, Waste Management applied for a certificate of occupancy (C of O) to operate a solid waste handling facility at 2160 Queens Chapel Road, N.E., in an area that is zoned C–M (Commercial–Light Manufacturing).[1] Waste Management contended that under the Zoning Regulations then in effect, it was entitled to this C of O as a matter of right. Alternatively, Waste Management asked the Zoning Division to reissue in its name a C of O for "processing" and other operations that had been issued in 1994 to a previous owner of the Queens Chapel Road facility.

■ The Zoning Administrator denied Waste Management's application on February 21, 1996. The Administrator concluded that the applicable Zoning Regulations did not permit solid waste handling operations at the Queens Chapel Road facility as a matter of right, and that Waste Management would therefore need to seek a variance[2] from the BZA. The Administrator denied Waste Management's alternative application for reissuance of the

1994 C of O because that C of O had since been revoked, "so there is no C of O to reissue." The Administrator stated that Waste Management could appeal this denial to the BZA.

Six days later, on February 27, 1996, the Solid Waste Facility Permit Act of 1995 went into effect. This Act, codified at D.C.Code §§ 6–3451 *et seq.* (1995), required all solid waste facilities in the District to apply for special permits as a condition of continued operation. Permits would be issued only upon a determination "that the solid waste facility is operating, or will operate, in full compliance with environmental, health, safety, and zoning laws, rules and regulations and that the solid waste facility will not endanger public health, safety, welfare, or the environment." D.C.Code § 6–3453(e)(2)(C). The Act further provided that existing facilities, such as the one at Queens Chapel Road, could continue to operate under interim operating permits while their permit applications were pending. *See* D.C.Code § 6–3453(b).

The responsibility for implementing the Solid Waste Facility Permit Act was delegated to the DCRA. On May 22, 1996, the DCRA sent a letter to Waste Management explaining what it needed to do to obtain an interim operating permit for its Queens Chapel Road facility. The DCRA advised that the interim operating permit would require Waste Management to apply for a "solid waste handling facility" C of O. Further, because the Zoning Administrator had already determined that solid waste

---

1. Waste Management submitted its application to the Zoning Division of the Building and Land Regulation Administration (BLRA) of the District of Columbia Department of Consumer and Regulatory Affairs (DCRA).

2. *See* D.C.Code § 5–424(g)(3) (1994). "[A] variance is granted to allow a use that ordinarily would be prohibited by the zoning

regulations.... To obtain a variance, the applicant must demonstrate that an undue hardship or an extraordinary situation would result if the Zoning Regulations were applied." *Citizens Coalition v. District of Columbia Bd. of Zoning Adjustment,* 619 A.2d 940, 948 (D.C.1993) (citations and footnotes omitted).

handling facilities must be approved by the BZA, Waste Management's C of O application would be denied and the DCRA then would "advise Waste Management to apply to the BZA for a variance."

Thereafter, on August 2, 1996, the DCRA issued Waste Management its interim operating permit for solid waste handling at the Queens Chapel Road facility. The permit required Waste Management to apply for a C of O within 30 days, and to apply to the BZA for the issuance of a solid waste handling facility C of O after the application was denied. The permit stated that it would expire if, among other contingencies, the BZA denied the request for a C of O.

██ As of August 1996, Waste Management had not appealed the denial of its 1995 C of O application.[3] Instead of doing so at that time, Waste Management reapplied for a C of O on September 3, 1996, as its interim operating permit directed it to do. In May of 1997, the DCRA denied the reapplication. The DCRA did not, however, advise Waste Management to seek a variance. Rather, the DCRA said that the company should seek a special exception[4] in accordance with proposed amendments to the Zoning Regulations that the Zoning Commission was then considering. The proposed amendments would authorize the BZA to grant special exceptions for solid waste handling facilities in districts zoned M and C M. Waste Management thereupon tendered a special exception application to the BZA. However, the BZA rejected the application because the proposed regulations had not yet been adopted.

Subsequently, in March of 1998, the Zoning Commission did adopt the proposed amendments. *See* 45 D.C.Reg. 1874 (1998). For whatever reasons, however, Waste Management did not resubmit a special exception application for its Queens Chapel Road facility. Rather, Waste Management advised the DCRA "that it was not going to proceed further with any action on a certificate of occupancy until DCRA worked out an appropriate procedure, process and rules that would not be changed and gave Waste Management explicit instructions." Waste Management asserts that the "DCRA never refused to acknowledge that position," though the DCRA did not furnish the company with written instructions on how to proceed.

Instead, beginning in April of 1998, the DCRA issued notices of infraction to Waste Management for operating a solid waste handling facility on Queens Chapel Road without a proper C of O. By January 1999, Waste Management claims, it was "becoming clear that the process mandated by DCRA was in fact little more than a 'bait and switch' game where Waste Management could not obtain the requisite approvals." As a result, as Waste Management later told the BZA, the company "determined that it had no choice other than to resume seeking a C of O as a matter-of-right as set forth in its 1995 application."

---

**3.** Waste Management subsequently represented to the BZA that it had been "preparing to file an appeal" up until the time it received the May 22, 1996, letter from the DCRA. "Based on" that letter, Waste Management said, it determined that "filing an appeal of its 1995[sic] action could result in DCRA's taking action to shut down the facility." The record contains no support, however, for the assertion that the DCRA would have tried to shut down the Queens Chapel Road facility if Waste Management had taken a prompt appeal.

**4.** Pursuant to D.C.Code § 5–424(g)(2), the BZA may grant requests for special exceptions where "the proposed use will be 'in harmony with the general purpose and intent of the Zoning Regulations.'" *Citizens Coalition,* 619 A.2d at 948 (citations and footnotes omitted).

Accordingly, on February 12, 1999, almost three years to the day after the Zoning Administrator denied its initial C of O application, Waste Management appealed that denial to the BZA.[5] The DCRA moved to dismiss the appeal for lack of jurisdiction on the ground that it was not timely, as required by the BZA's Supplemental Rules of Practice and Procedure. *See* 11 D.C.M.R. § 3315.2 (1985).

After a hearing on the issue, the BZA granted the motion and dismissed Waste Management's appeal. In its written order of May 22, 2000, the BZA stated that "a standard of reasonableness is applicable to determine whether an appeal is timely," and that it was "not reasonable" for Waste Management to wait three years after it had notice of the decision of the Zoning Administrator before taking an appeal. The BZA rejected Waste Management's argument that it filed its appeal within a reasonable time in light of its active pursuit of other administrative remedies at the behest of the DCRA: "A long interval, such as three years, does not become reasonable merely because an appellant initially chooses to pursue other options instead of preserving its appeal rights by filing a timely appeal."

Waste Management petitioned this court to reverse the BZA's dismissal of its appeal as arbitrary, capricious, and an abuse of discretion. *See* D.C.Code § 1–1510(a)(3)(A) (1999). Waste Management argues that the BZA erred in applying a per se rule that a delay of three years is "too long no matter what the reason," and in disregarding what it calls "the runaround process which the District made Waste Management endure." Opposing the petition, the District argues that Waste

Management's three-year delay in appealing the denial of its C of O application was "inherently unreasonable," and that the BZA's determination was well within its discretion.

## II.

■ "Appeals to the Board of [Zoning] Adjustment may be taken by any person aggrieved ... by any ... administrative decision based in whole or in part upon any zoning regulation or map...." D.C.Code § 5–424(f) (1994). Although the statute thus confers a right of appeal to the BZA, it is silent as to the time frame in which an appeal must be taken. The statute does, however, authorize the Zoning Commission and the BZA to adopt rules of procedure. *See* D.C.Code § 5–424(c). Pursuant to that authorization, the BZA adopted the following rule:

> Any person aggrieved by any order, requirement, decision, determination, or refusal made by an administrative officer or body, including the Mayor of the District of Columbia, in the administration or enforcement of the Zoning Regulations, may file a *timely* appeal with the Board as may be provided by the Board.

11 D.C.M.R. § 3315.2 (emphasis added). The requirement set forth in this rule that an appeal be timely is jurisdictional; hence we have said that "if the appeal was not timely filed, the Board was without power to consider it." *Goto v. District of Columbia Bd. of Zoning Adjustment,* 423 A.2d 917, 923 (D.C.1980); *accord, Mendelson v. District of Columbia Bd. of Zoning Adjustment,* 645 A.2d 1090, 1093 (D.C.1994). Our review of a BZA decision that an appeal was not "timely" within the mean-

---

5. Together with its appeal, Waste Management also applied in the alternative for a special exception to permit it to operate a solid waste handling facility, pursuant to the March 1998 amendments to the Zoning Regulations. At Waste Management's request, the BZA agreed to defer consideration of the special exception application until after the appeal was decided.

ing of § 3315.2 is deferential; and we will uphold the agency's interpretation of its own procedural regulation unless that interpretation is "clearly wrong." *Goto,* 423 A.2d at 924 (citations omitted).

■ "Because the rules of the BZA adopt no specific time limit on appeals, a standard of reasonableness is applied in determining whether an appeal is timely." *Woodley Park Cmty. Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 490 A.2d 628, 636 (D.C.1985). Reasonableness is a standard that requires due consideration of attendant facts and circumstances that legitimately may bear on the particular appellant's ability to seek review. For example, "[i]n applying the reasonableness standard, courts have consistently held that the time for filing an appeal commences [only] when the party appealing is chargeable with notice or knowledge of the decision complained of." *Woodley Park,* 490 A.2d at 636.

■ Although what constitutes reasonable time to appeal may thus depend on the circumstances, the question "should not be decided on an ad hoc basis." 3 EUGENE H. ZIEGLER, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 37.04[1][a][ii] at 37–61–62 (4th ed.2001)(hereinafter "ZIEGLER"). A reasonable time in which to appeal is measured by the time that fairness dictates to enable an aggrieved party to evaluate the appropriateness of seeking review, to obtain the assistance of counsel, and to take the other steps necessary to proceed. "[A] delay ... for that purpose is essentially what a statutory appeal period contemplates." *Beins v. District of Columbia Bd. of Zoning Adjustment,* 572

A.2d 122, 127 (D.C.1990). This conception of the reasonableness standard does not countenance delay in taking an appeal when it is merely convenient for an appellant to defer making that decision. Rather, because deadlines for taking appeals serve important ends,[6] they should not be extended without good cause. We therefore think that the reasonableness standard imposes a duty on appellants to act with diligence and prudent dispatch in protecting their own interests through the appellate process.

■ Consistent with these principles, prior decisions of this court have held delays of one or two months in filing appeals to the BZA to be reasonable. *See Mendelson,* 645 A.2d at 1094; *Beins,* 572 A.2d at 127; *Woodley Park,* 490 A.2d at 637; *Goto,* 423 A.2d at 924–25. On the other hand, in *Woodley Park,* we held that a delay of a year was not reasonable, and we implied through citation of authority from another jurisdiction that a delay of four months would not be reasonable either. *See* 490 A.2d at 637 (citing *Maroney v. Friere,* 74 Misc.2d 339, 343 N.Y.S.2d 183, 185 (N.Y.Sup.Ct.1973)). Experience teaches that in the ordinary scheme of things, two months is ample time in which to decide whether to seek appellate review and act accordingly. At least in the absence of exceptional circumstances substantially impairing the *ability* of an aggrieved party to appeal-circumstances outside the party's control—we conceive of two months between notice of a decision and appeal therefrom as the limit of timeliness.

---

**6.** A rule designating a period after which the order, requirement, decision, or determination of the administrative officer is no longer subject to review is a salutary one. It provides a period after which the permittee knows that he may proceed safely in accordance with the permit. Where the permit is denied, it gives those opposing its issuance assurance that the applicant who has been denied the permit may no longer secure a review, and a possible reversal, by the board of appeals, and that their vigilance need no longer be maintained.
ZIEGLER, § 37.04[1][a][i] at 37–60–61.

 Turning now to this case, Waste Management knew of the Zoning Administrator's final decision on its 1995 C of O application on or about the date it was issued, February 21, 1996. The BZA therefore properly assessed the timeliness of Waste Management's appeal by reference to that date. *See Goto,* 423 A.2d at 924 and 925 n. 16. And in light of our precedents and the principles discussed above, Waste Management's decision to wait three years before filing its appeal was presumptively unreasonable. Waste Management's burden of convincing us otherwise is a heavy one.

Waste Management has not shouldered that burden. Contrary to its argument, the BZA did take into consideration Waste Management's reasons for not appealing sooner. The BZA simply found those reasons wanting. We do not see how the BZA could have reached any other conclusion. The fact that Waste Management chose to concentrate on avenues that reasonably may have appeared more promising than an appeal does not excuse its delay in noting an appeal. *Cf. Woodley Park,* 490 A.2d at 638 (efforts to resolve dispute through negotiations did not excuse delay in filing appeal; appellant "cannot now escape the harsh consequences of its one year delay in appealing because WSC—its adversary in difficult negotiations—was less than fully candid"). It is true that from the February 1996 denial onward, the DCRA consistently disagreed with Waste Management's contention that it was entitled to a C of O as of right, and took the contrary position that Waste Management should apply for a variance or a special exception. But the DCRA did not preclude Waste Management from taking a prompt appeal from the February 1996 denial if the company was of a mind to do so. Indeed, Waste Management could have taken such an appeal and applied for a variance or a special exception simultaneously—as it eventually did three

years later, in February 1999. *See* note 5, *supra.*

We conclude that the BZA's determination that Waste Management's appeal was untimely was fully in accordance with law, and was neither arbitrary, capricious, nor an abuse of discretion. The decision of the BZA dismissing the appeal is affirmed.

*So ordered.*