**In Re ESTATE OF Elise DERRICOTTE;**

**Claude O. BARRINGTON, Appellant.**

No. 01–PR–1210.

District of Columbia Court of Appeals.

Argued Dec. 17, 2003.
Decided Oct. 27, 2005.

Vanessa Carpenter Lourie, Washington, for appellant.

Darrel S. Parker, Washington, for appellee.

Before WASHINGTON, Chief Judge,[1] FARRELL, Associate Judge, and KING, Senior Judge.

WASHINGTON, Chief Judge:

The instant appeal arose from the aftermath of litigation in a probate matter in which this court previously affirmed the removal of two brothers ("the Phillips brothers") who had fraudulently usurped the role of personal representatives of the Estate of Elise P. Derricotte from the rightful heir. *In re Estate of Elise P. Derricotte*, 744 A.2d 535 (D.C.2000) (*Derricotte I*). Although we ruled in *Derricotte I* that the brothers were required to repay the funds that they had improperly taken from the estate, a collateral issue remained outstanding at the time of the appeal: whether the brothers' attorney, Claude O. Barrington ("Barrington"), was required to reimburse the estate for the fees *he* had earned for his assistance in probating the estate prior to the Phillips brothers' removal. Although the trial court had ruled on January 8, 1997 (and in its amended order of January 23, 1997) that Mr. Barrington was entitled to keep the fees he had earned, successor personal representative Darrel S. Parker ("Successor") timely moved for reconsideration of the order on January 24, 1997. The trial court had not ruled upon the motion by the time the appeal was argued before this court in November 1999. Therefore, after this court issued its opinion in *Derricotte I* in January 2000, Successor renewed his motion for reconsideration of the January 8, 1997 and January 23, 1997 orders. The trial court granted his motion for reconsideration on July 30, 2001, ordering Mr. Barrington to reimburse the estate for the

---

1. Chief Judge Washington was an Associate Judge of the court at the time this case was argued. His status changed to Chief Judge on August 6, 2005.

attorney's fees he had been paid for assisting the Phillips brothers. Mr. Barrington noted the instant appeal.

On appeal, Barrington contends that the trial court erred in granting the motion for reconsideration because (1) the trial court treated Successor's renewed motion as unopposed when, in fact, Barrington had noted an opposition to the motion, (2) the motion was not based on one of the seven exclusive grounds set forth in Super. Ct. Prob. R. 130 justifying relief from the order, (3) a number of appeals had already been noted in the *Derricotte* matter at the time Successor filed his motion for reconsideration, so Successor, too, should have noted an appeal in order to preserve his rights, and (4) the doctrine of laches prevented the trial court from granting Successor's motion for reconsideration. We affirm.

**Factual & Procedural Background**

Although most of the relevant facts are set forth in *Derricotte I*, it is useful to recall some of those facts here. On January 28, 1993, Gilbert and Preston Phillips ("the Phillips brothers") filed a petition for probate in the Superior Court of the District of Columbia, seeking appointment as personal representatives of the estate of Elise P. Derricotte. Claiming to be the sole surviving heirs of the Derricotte Estate, the Phillips brothers hired attorney Claude O. Barrington ("Mr.Barrington") to represent them in probating the estate. After the Phillips brothers' petition was granted and they received letters of administration, the brothers filed Waivers of Filing Inventory and Accounts and distributed $526,534 of the estate's personal property to themselves. The Phillips brothers paid Mr. Barrington $36,597.08 for his services in probating the estate.

In August 1993, three creditors filed a complaint seeking to remove the Phillips brothers as personal representatives and to set aside the distribution of assets. The complaint alleged that Ms. Ida Brown Bryant was Elise Derricotte's next of kin, and as such, the rightful heir to her estate. Ms. Bryant, a mentally incompetent elderly woman residing at Maryland's Crownsville Hospital Center, was allegedly Elise Derricotte's first cousin and the Phillips brothers' aunt. After receiving a copy of the creditors' complaint, Ms. Bryant's guardian ad litem filed an amended answer and cross-claim seeking to be named the rightful heir to the Derricotte estate and requesting the removal of the Phillips brothers as personal representatives. On December 4, 1995, the trial court ruled that Ms. Bryant was the legal heir to the Derricotte estate and that the original personal representatives were not Ms. Derricotte's true next of kin. As a result, the brothers were removed and Darrel S. Parker was appointed successor personal representative ("Successor") of the Derricotte Estate.

On December 29, 1995, Successor filed a Petition for Rule to Show Cause why Mr. Barrington should not be required to disclose and turn over to him all attorneys' fees paid by the prior personal representatives without court approval. In support of this motion, Successor attached relevant portions of a transcript of Mr. Barrington's July 7, 1995 deposition, in which Mr. Barrington had refused to disclose the amount of legal fees he had received from the brothers and indicated that he had been paid "when [he] closed out the estate." On September 11, 1996, the trial court ordered Mr. Barrington to appear to "show cause why he should not be required to return to this estate any and all sums disbursed to him as legal fees that were not approved by the Superior Court." Mr. Barrington filed a reply to the Order to Show Cause on October 3, 1996 and a hearing was held the following day. Judge Long issued an

Order in Mr. Barrington's favor on January 8, 1997, which was amended on January 23, 1997. The very next day, Successor filed a motion to reconsider the Orders of January 8 and January 23, 1997. Neither Mr. Barrington nor his attorney received notice of this motion.

Before the motion to reconsider could be heard by the trial court, the Phillips brothers along with various creditors of the estate filed a series of appeals with this court.[2] We consolidated the appeals and heard arguments on November 18, 1999. *See Derricotte I, supra,* 744 A.2d at 535. During the pendency of the consolidated appeals, the trial court lost its jurisdiction to proceed with the motion to reconsider and this court was unaware that such a motion had been filed. We issued our ruling in *Derricotte I* on January 27, 2000.

On January 28, 2000, Successor promptly renewed his motion to reconsider with the trial court. Unlike previously, Barrington did receive notice of this motion. The trial court incorrectly deemed the renewed motion to be unopposed but nonetheless decided the issue on the merits. Relying on the previously compiled record, Judge Long granted Successor's motion and directed Barrington to return $36,597.08 in legal fees to the estate. This appeal follows.

**(1) Trial court's failure to consider Barrington's opposition to successor's renewed motion to reconsider**

■ In its order granting Successor's renewed motion for reconsideration, the trial court indicated that Barrington's failure to note an opposition "entitle[d] the court to treat both matters as conceded on the merits." It appears from the record, however, that Barrington's opposition was, in fact, docketed with the clerk of the Probate Division on August 14, 2000.

Therefore, the court's statement in its July 30, 2001 order that Barrington had failed to note an opposition was error. We find that this error was harmless, however, because the trial court granted the motion for reconsideration on the merits and because, in any event, the arguments advanced in Barrington's opposing brief were unsupported.

The trial court's order makes clear that it granted Successor's motion for reconsideration because its earlier ruling that Barrington was entitled to keep his legal fees was based on an incorrect factual premise. The trial court explained:

> In its previous order filed on January 8, 1997, this Court denied a request to require Barrington to return to this estate whatever compensation was paid to him by Gilbert and Preston Phillips. He had contended that his clients paid his fee out of monies that were their own inheritance, after they had completed estate administration. Initially, this Court had rationalized the fee payment based upon the fact that it was not paid from estate assets prior to the closure of the estate (needing prior court authority).... In support of his Renewed Motion, the Successor has attached relevant excerpts from the transcript of the deposition of Barrington. Barrington admitted a key fact, *i.e.,* that his fees were paid simultaneously with the closure of the estate. Tr. at 106. This is critical, because it provides proof that his fees were paid entirely with funds disbursed from the estate, not commingled with any other private funds of his clients....

As a result of its finding that Barrington had actually been paid from the estate, the trial court concluded that Barrington was not entitled to keep his attorneys' fees

---

**2.** A total of seven appeals were filed prior to    this one.

because he had not received court approval prior to his payment. *See In re Utley*, 698 A.2d 446 (D.C.1997) (taking a fiduciary fee without requisite court approval constitutes "misappropriation").

Barrington's motion in opposition did not challenge the legal merits of Successor's claim that he was not entitled to attorneys' fees. Barrington did, however, advance three arguments that were not addressed in the trial court's order: (1) that Successor "raised no new issues, no new facts, or any other matter that would justify relief from the operation of the order" under Super. Ct. Prob. R. 130, (2) that Successor should have filed an appeal rather than moving for reconsideration, and (3) that "it would be patently unfair to allow [Successor] to re-raise this issue at this late date." Barrington makes these same arguments in the instant appeal, and we will address each of them in turn. Because we do not find these arguments persuasive, we hold that the trial court's error in failing to address them was harmless.

(2) Effect of Super. Ct. Prob. R. 130

Barrington claims that the trial court erred in granting Successor's renewed motion for reconsideration because that motion was not based on any of the seven exclusive grounds enumerated in Super. Ct. Prob. R. 130 warranting reconsideration.[3] Regardless of whether Successor's motion alleged any of Super. Ct. Prob. R. 130's seven exclusive grounds for reconsid-

eration, Rule 130 applies only to probate matters "not initiated by a complaint and summons." Super Ct. Prob. R. 130(a); *See also In re Estate of Barfield*, 736 A.2d 991, 995 (D.C.1999). Because Successor's motion for reconsideration followed a series of complaints filed by various parties seeking to remove the Phillips brothers as personal representatives of Elise P. Derricotte's Estate, *see Derricotte I*, 744 A.2d at 537–38, Successor's motion is not governed by Super. Ct. Prob. R. 130. *See Barfield*, 736 A.2d at 995. Instead, we consider Successor's motion a timely filed motion for reconsideration under Rule 59(e). *See id.; see also* Super. Ct. Prob. R. 1(f) ("Except where inconsistent with the provisions of the Probate Division Rules … the Superior Court Rules of Civil Procedure are applicable to proceedings in the Probate Division."); Super. Ct. Civ. R. 59(e) ("Any motion to alter or amend judgment shall be filed no later than 10 days after entry of the judgment").

On appeal, we review a trial court's decision to grant a Rule 59(e) motion for reconsideration for abuse of discretion. *Perry v. Sera*, 623 A.2d 1210, 1217 (D.C. 1993). A trial court may grant a Rule 59(e) motion in order to correct manifest errors of law or fact. *See Dist. No. 1— Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Travelers Cas. & Sur. Co.*, 782 A.2d 269, 278–79 (D.C.2001) (citing 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCE-

---

**3.** The following are the seven grounds upon which a motion for reconsideration under Super. Ct. Prob. R. 130 may be based: (1) the court failed to consider a material fact or law upon which such matter was based; (2) the emergence of new material facts that could not have been discovered with due diligence or a change of law not previously brought to the court's attention; (3) there was no discernible basis or reason given for the court's order; (4) fraud (whether denominated intrin-

sic or extrinsic), misrepresentation, or other misconduct of another person or entity interested in the proceeding; (5) mistake, inadvertence, surprise or excusable neglect; (6) the order pertains to a matter or matters on which no other interested person or party entered an exception, objection or otherwise contested the issues disposed of therein; or (7) any other reason justifying relief from the operation of the order.

DURE § 2810.1, at 125–26 (1995 ed.)); *see also, e.g., DiPasquale v. Milin,* 303 F.Supp.2d 430 (S.D.N.Y.2004) (holding that "[r]econsideration is properly granted 'to correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence.'" (citation omitted)).[4]

■ We find no abuse of discretion in the trial court's granting of the motion for reconsideration. Successor in his motion has made a prima facie case for reconsideration of the trial court's January 8 and January 23, 1997, orders declining to require Mr. Barrington to return his legal fees. In Successor's motion, he cites to law and fact indicating that the previous orders were in error and that Mr. Barrington's fees are subject to reclamation by the estate. Based on this prima facie showing, the trial court was well within its discretion to reconsider its judgment.

(3) Successor was not required to file an appeal because the decision to seek reconsideration of a decision in the trial court or an appeal in this court is left to the movant/appellant.

■ Rule 59(e) states that "[a]ny motion to alter or amend judgment shall be filed no later than 10 days after entry of the judgment." Super. Ct. Civ. R. 59(e). The choice to file a motion for reconsideration, rather than an appeal, is not restricted by any statute or rule. *See id.* While Successor could have chosen to note an appeal from the trial court's initial decision, we are not aware of any cases or other authority that required Successor to take an appeal with this court[5] as opposed to filing a motion for reconsideration with the lower court pursuant to Rule 59(e). The discretion rests, in this case, with Successor, who chose to remain in the lower court to seek reconsideration of that court's judgment.

(4) It is not unfair for the trial court to hear the renewed motion for reconsideration three years later.

■ "Laches is the principle that equity will not aid a plaintiff whose *unexcused* delay ... would be prejudicial to the defendant." *Federal Mktg. Co. v. Virginia Impression Prods. Co.,* 823 A.2d 513, 525 (D.C.2003) (internal quotations and citations omitted) (emphasis added); *see also Powell v. Zuckert,* 125 U.S.App. D.C. 55, 57, 366 F.2d 634, 636 (1966) ("The defense of laches stems from the principle that 'equity aids the vigilant, not those who slumber on their rights,' and is designed to promote diligence and prevent enforcement of stale claims." (citation omitted)). To successfully establish the defense of laches, one must establish both that the delay was unreasonable and that one was prejudiced by the delay. *See American Univ. Park Citizens Ass'n v. Burka,* 400 A.2d 737, 740 (D.C.1979). "The prejudice

---

4. Except for insertion of reference to the courts of the District of Columbia, Super. Ct. Civ. R. 59(e) is identical to Fed.R.Civ.P. 59(e). *See* Super. Ct. Civ. R. 59(e) cmt.

5. Other jurisdictions have interpreted Fed. R.Civ.P. 59(e) to be an efficient mechanism by which a movant can avoid the appellate process by remaining in the trial court with a judge familiar with the factual record. *See, e.g., Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1249 (9th Cir.1982) (stating that "Rule 59(e)

provides an efficient mechanism by which a trial court judge can correct an otherwise erroneous judgment without implicating the appellate process ... [a] motion for reconsideration may, in some instances, avoid the necessity of an appeal" (internal citations omitted)). Describing Rule 59(e) in terms of judicial efficiency leads us to conclude that there should be very few limits placed on a movant's ability to seek reconsideration in the trial court without implicating the appellate process.

normally contemplated in applying laches ... stems from such factors as loss of evidence and unavailability of witnesses, which diminish a defendant's chances of success." *Powell, supra,* 125 U.S.App. D.C. at 59, 366 F.2d at 638.

■ A timely filed appeal divests the trial court of jurisdiction. *See, e.g., In re S.C.M.,* 653 A.2d 398, 402 (D.C.1995) (noting, however, that appeals of collateral issues, such as granting or denying preliminary injunctions, does not divest the trial court of jurisdiction to proceed on the merits). In the instant situation, the Phillips brothers timely filed an appeal from the trial court's judgment requiring them to return the money taken from the estate. That appeal divested the trial court of jurisdiction in this matter.[6] Once this court rendered a decision in *Derricotte I* and the appeal ended, jurisdiction returned to the trial court with respect to the unfinished motion for reconsideration.[7] Successor, without delay, renewed his motion for reconsideration once jurisdiction was properly revested in the trial court.

In his brief, Mr. Barrington notes that during the three year gap between the motions one of the Phillips brothers, as well as Ida Brown Bryant, the heir to the estate, died. Using these deaths as a foundation, Mr. Barrington argues that the equitable principle of laches prevents this motion from being considered. Mr. Barrington, however, has failed to establish the two necessary elements of laches: unexcused delay by Successor and prejudice to himself. Typically, prejudice is the primary factor to be analyzed by a court in assessing a laches defense. *See Fed. Mktg. Co., supra,* 823 A.2d at 525 (citing *Beins v. District of Columbia Bd. of Zoning Adjustment,* 572 A.2d 122, 128 (D.C. 1990)). The instant appeal, however, is one of the unique strain of cases that can be resolved solely on the "unexcused delay" element. It is without question that Successor has an excuse for the three year gap between the motions. Were it not for the series of appeals taken by Mr. Barrington's own clients, among others, the lower court would have retained jurisdiction over the motion for reconsideration and would have rendered a decision over three years ago. The divestment of the trial court's jurisdiction was not Successor's fault, and is an excuse for the delay in renewing the motion.

■ Furthermore, were we to have found the delay unexcused, Mr. Barrington's laches defense would still fail because he did not establish the equally necessary prejudice element. Although two parties to the original suit have since passed away, neither of those two parties is necessary to Mr. Barrington's ability to defend himself. Ms. Bryant's death is of no consequence to Mr. Barrington's defense; not being a party to the transaction in question, she has no relevance as a witness. The impact of the death of Gilbert Phillips, one of the two Phillips brothers, is diminished by the fact that the other brother is alive and capable of testifying, Mr. Barrington's own deposition testimony is available,[8] and evidence

6. Various creditors of the estate also filed appeals with this court. Those appeals also divested the trial court of jurisdiction.

7. Had we been aware of the fact that a motion for reconsideration was pending in the trial court, it is likely that we would have declined to hear the appeals taken in *Derricotte I* until this matter was resolved. *See* D.C.Code § 11–721(a)(1).

8. This deposition testimony was a critical component in the lower court's determination that the legal fees were paid out of the estate account. In his testimony, Mr. Barrington states that his legal fees were paid simultaneously with the closing of the estate. This admission allowed the trial court to reasonably conclude that the money used to pay Mr.

of the instrument used to pay Mr. Barrington's fees has been discovered.[9] The delay in the hearing' on the motion for reconsideration results in no prejudice on Mr. Barrington's ability to defend his actions.

Accordingly, for the forgoing reasons, we affirm the judgment of the trial court.

*So ordered.*

Barrington came from Estate funds and not private or commingled funds.

9. The instrument clearly shows that the Philips brothers acted in their capacity as personal representative of the estate when signing the check. This check was not available prior to this appeal and thus is not part of lower court's record. If this case were to be remanded, however, Successor would be able to introduce this instrument and use it to diminish any prejudice alleged by Mr. Barrington.